MICHAEL L. COHEN (SBN: 206253)
MICHAEL L. COHEN, a PLC
707 Wilshire Boulevard, Suite 4100
Los Angeles, California 90017
Telephone: (213) 943-6800
Facsimile:  (213) 943-6850
michaellcohen@cohen-law.org

Attorney for Plaintiff
STEVEN M. ROTH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA (WESTERN DIVISION)

| | |
|---|---|
| STEVEN M. ROTH, | Case No.: CV 05-8991 ODW (JTLx) |
| Plaintiff, | *Assigned to Hon. Otis D. Wright II* |
| vs. | **ROTH'S MOTION IN LIMINE NO. 6, TO LIMIT THE TESTIMONY OF WITNESS BERND HEINZE** |
| ZURICH AMERICAN INSURANCE COMPANY, | |
| Defendant. | Pretrial Conference: October 26, 2009<br>Trial: November 3, 2009 |

1

# ROTH'S MOTION

Roth moves the court for an order prohibiting Zurich's newly designated "bad faith" expert Bernd Heinze from expressing inadmissible opinions regarding legal issues or ultimate issues that the jury must decide. Roth makes this motion because Mr. Heinze has repeatedly and persistently expressed—in both his report and during his deposition—inadmissible opinions, such as the following:

- that Zurich acted "in good faith"
- that Zurich "did not act in bad faith"
- that Zurich acted "reasonably"
- that Zurich "did not act unreasonably"
- that "[t]here is no credible or material evidence from which to conclude that Zurich acted unreasonably, without proper cause, consciously or deliberately against the rights and interests of Mr. Roth, vexatiously, or in bad faith in respect of the actions taken." (Heinze Report, p. 4)
- that Zurich's personnel did not act with "ill will or motive or deceitful purpose."

Each of these statements, and others like them, is a legal conclusion and represents either improper opinion testimony regarding the law, or the improper application of the law to the witness's understanding of the facts to express a legal conclusion regarding the ultimate issues to be decided by the jury. Zurich might be able to elicit this inadmissible testimony from Mr. Heinze before his counsel can object. He therefore seeks an order from this Court appropriately limiting Mr. Heinze's testimony.

/ / /

This motion is based on Bernd Heinze's report, the transcripts from the deposition of Mr. Heinze, the following Memorandum of Points & Authorities, the supporting Declaration of Donald C. Erickson and the attached exhibits, and on the pleadings and papers on file with the Court.

## FACTUAL BACKGROUND

### Zurich's Newly Designated "Bad Faith" Expert—Bernd Heinze

On September 9, 2009, the parties filed a Joint Statement of Witnesses & Testimony. In that document, Zurich described the anticipated testimony of expert witness Paul Woolls in these terms: "Mr. Woolls is expected to testify about the Zurich Policy and the reasonableness of Zurich's handling of the underlying claims. Mr. Woolls is expected to further testify that Zurich acted reasonably and in accord with industry custom and practice."

On September 11, 2009, this court granted Zurich's motion to continue the trial in this matter and permitted "the substitution of a new expert witness for defendant" to replace Paul Woolls. CIVIL MINUTES, 9-11-09, Doc. 594, at 2.

On September 21, 2009, Zurich advised Roth's counsel that it had designated Bernd Heinze as its "testifying expert regarding insurance claims practices."

### Mr. Heinze's Report & Deposition Testimony

On October 13, 2009, Roth received Mr. Heinze's report, attached to the Erickson Declaration as Exhibit 3. Mr. Heinze's 55-page report summarizes some of the claims history but does not contain any analysis of Zurich's claims procedures beyond noting that tenders were "timely acknowledged" and that the claims were "promptly declined," nor does it contain any evaluation or assessment of Zurich's claims procedures in this case

compared to any objective standards, such as regulatory requirements, case law standards, or specific industry practices.

In his deposition on Friday, October 16th, Mr. Heinze testified that he had not been retained to opine regarding claims procedures and standards, but only to determine whether Zurich's handling, taken as a whole, was "in good faith" and "reasonable." Specifically, he testified as follows:

>     Q. You are here testifying as an expert on claims handling standards; correct?
>     A. *No.*
>     Q. You are not?
>     A. *No. I am here to testify as to whether or not the actions and conduct of the Zurich claim counsel were undertaken reasonably and in good faith.*
>     Q. Sir, are you an expert on claims handling?
>     A. *I am not here as an expert on claims handling. I am here as an expert on bad faith.*
>     Q. That wasn't my question, but we will come back to that in a second. Okay. So you are not here to testify as an expert in the handling of claims; correct?
>     A. I am here to testify in the terms of the weight [sic] in which the claims were handled and the conduct of that handling as to *whether or not that equated to bad faith*.

/ / /

Heinze Depo. Vol. 1 at 103:4-20 (emphasis added).  Indeed, Mr. Heinze specifically denied expertise in claims handling procedures:

> Q.  My question, sir, isn't what your assignment is. My question is different.  Are you an expert in claims handling, standards and guidelines?
>
> A.  ***I wouldn't say I am an expert in it, no.***  I am a practitioner in it, and I understand the industry, and I practice it every day.  ***But I have not been qualified as an expert in claims handling practices to date, nor have I been retained as such.***

Heinze Depo. Vol. 1 at 104:4-12 (emphasis added).

The second session with Mr. Heinze took place four days later, on Tuesday, October 20th.  Mr. Heinze immediately sought to "correct" his prior testimony:

> Q   Do you have any changes you want to make?
>
> A   Yes, please.
>
> Q   Go ahead.
>
> A   On I believe it was Page 19, Mr. Cohen, where you engaged me in a discussion on whether I was testifying here today as an expert on claims handling practices.  And as I explained to you during the course of some follow-up questions, ***I was retained for the purpose of evaluating whether there was unreasonable conduct by the Zurich Claims Counsel with regard to any***

1  *lack of probable cause with the decisions that they had*
2  *made under the totality of circumstances at the time*
3  *that they made them . . .*
4
5  Q   What brought you to this 180-degree change
6  from, I'm not an expert on claims handling to I am a
7  qualified expert on claims handling?
8  A   Well, the way the question was phrased,
9  Mr. Cohen, was are you here today as an expert on claims
10 handling practices. *And my retention was to look at the*
11 *bad faith issues.* But since there is, as I described, a
12 relationship between the two and since we did get
13 involved in subsequent questions with regard to claims
14 practices, which I did answer and as I did reference in
15 my report, I wanted to make sure we corrected that for
16 the record today.  When I read the transcript this
17 morning I saw it.  I said well, I have to make sure I
18 make that correction for you because it's not fair.
19 Q   I'm sure it was an urgent correction.  Any
20 other corrections?
21 A   No, sir.
22 Q   That's it?
23 A   That's it.
24 Q   The only one?
25
26
27
28

6

| | | |
|---|---|---|
| A | That's it. | |
| Q | You're sure? | |
| A | Yes, sir. | |
| Q | Morning and afternoon both? | |
| A | Yes, sir. | |

Heinze Depo., Vol. 2, at 152:3-154:3 (emphasis added).

## ARGUMENT

### MR. HEINZE'S OPINIONS REGARDING LEGAL ISSUES AND ULTIMATE ISSUES OF LAW ARE INADMISSIBLE, AND THE COURT SHOULD EXCLUDE THEM.

"[O]pinion testimony about standards of conduct in the insurance industry is useful to the jury in evaluating claims of bad faith, since normal practices in the industry are not commonly known." *Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 924. However, such an expert's testimony may not "improperly embrace the issue of bad faith under Fed.R.Evid. 704(a)." *Hangarter v. Provident Life and Acc. Ins. Co.* (9th Cir. 2004) 373 F.3d 998, 1016. *Hangarter* was an appeal from a substantial bad faith judgment against a disability carrier. The carrier challenged testimony from plaintiff's expert witness regarding industry claims standards and practices as improperly usurping the role of the court. The Court carefully distinguished such testimony from the improper expression of legal conclusions: "Such an expert may not "testif[y] that he . . . reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law)." *Hangarter*, 373 F.3d at 1016.

/ / /

*Montagne v. Safeco Ins. Co. of Illinois* (D.Alaska, 2008) 2008 WL 2225770, involved an action for insurance bad faith. The court excluded testimony from the plaintiff's expert in part because "[an expert] may not offer opinion testimony that [a carrier's] conduct ***amounted to bad faith or was unreasonable*** because such testimony would be an expression of opinion on a legal issue." Id. at *5 (emphasis added). The court continued:

> On the other hand, he may offer testimony to the effect that [the carrier] acted inconsistently with industry standards from which the finder of fact could infer that [the carrier] acted unreasonably, in bad faith, or both. This conclusion is amply supported by the Ninth Circuit's decision in *Hangarter v. Provident Life & Accident Ins. Co.* . . . [The expert's] opinion testimony might also support a finding that [the carrier] acted unreasonably, but he may not testify that [the carrier] Safeco acted unreasonably.")

2008 WL 2225770, at *5 (emphasis added).

A case from another district court is instructive and almost identical on its facts to the present case. *Employers Reinsurance Corp. v. Mid-Continent Cas. Co.* (D.Kan. 2002) 202 F.Supp.2d 1212, involved a dispute over reimbursement of certain litigation expenses under a reinsurance treaty. Mid-Continent Casualty ("MCCC") retained an expert—Hall—to review the conduct of Employers Reinsurance ("ERC"). Hall opined that ERC had dealt with many other claims over a period of years without advising MCCC that ERC felt it did not owe reimbursement of declaratory relief costs. The court struck the

recap and characterization, from MCCC's expert noting that "[e]xpert testimony on these subjects is not necessary. The normal experiences and qualifications of lay jurors will enable them to draw their own conclusions on these issues, based on the evidence at trial." 202 F.Supp.2d at 1219.  Hall also had opined that "[t]he conduct of ERC has been unreasonable and unfair and constitutes bad faith owing to its violation of the duty of utmost good faith and fair dealing in its performance in dealing with MCCC's reinsurance claim." *Id.*  Explaining why that testimony was inadmissible, the court wrote:

> This portion of Hall's opinion constitutes an impermissible attempt to apply the law to the facts of the case to form a legal conclusion. See *Evans*, 936 F.2d at 476; see also *Breezy Point Coop., Inc. v. CIGNA Prop. & Cas. Co.*, 868 F.Supp. 33, 36 (E.D.N.Y.1994) (improper to offer "conclusions as to the legal significance of various facts [to be] adduced at trial") (quoting *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 508 (2d Cir.1977)).

*Id.*

Here, Mr. Heinze described the task assigned to him as follows:
> Whether or not the activities and conduct of Zurich's claims counsel were **reasonable** and were **based upon probable cause** or whether they were **unreasonable**. Whether there was any evidence of **ill will or motive or deceitful purpose** and to provide a report to him orally after I had examined all the documents.

Heinze Depo. Vol. 1, at 23:2-7 (emphasis added).

Mr. Heinze's report is similarly devoid of material that would assist the trier of fact to understand the facts of this case. After a 33-page recap of the history of the seven underlying claims, Heinze reached the unsupported conclusions that Zurich's handling was "reasonable" and "in compliance with industry standards." His testimony in deposition reveals just how thoroughly his testimony would invade the province of judge and jury:

> I advised [Zurich's counsel] that I had completed my review of all the materials I had been sent and found that based upon a ***preponderance of the evidence*** and looking at all the objective materials under the ***totality of circumstances***, that ***I could not find unreasonable conduct*** on the part of Zurich's claims counsel or that they had acted in a manner that would provide ***culpability*** to Zurich for extra-contractual damages or ***bad faith***.

Heinze Depo. Vol. 1 at 24:2-9 (emphasis added), in Erickson Dec., Ex. 4. Yet Mr. Heinze's report makes no reference to industry standards, or applicable state requirements, or any other objective standards. Like Justice Stewart when asked to define what constitutes "pornography,"[1] Mr. Heinze's standard for determining good faith and bad faith in claims-handling is "I know it when I see it."

---

[1] "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it. . ." *Jacobellis v. State of Ohio* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683 (U.S. 1964).

## CONCLUSION

Mr. Heinze's opinions regarding the ultimate issues are not admissible evidence meant to assist the Court and the jury. Rather, they are inadmissible attempts to displace them.

Roth respectfully requests that the Court issue an order precluding Mr. Heinze from testifying to any of the following:

- that Zurich acted "in good faith,"
- that Zurich "did not act in bad faith,"
- that Zurich acted "reasonably,"
- that Zurich "did not act unreasonably," or
- that Zurich's personnel did not act with "ill will or motive or deceitful purpose."

Roth further requests that the order preclude Mr. Heinze from offering any other opinion that addresses the law, the application of the law to the facts of the case, or the ultimate issues in this case.

Respectfully submitted,

DATED: November 18, 2009          MICHAEL L. COHEN, a PLC


By: /s/ *Michael L. Cohen*
    Michael L. Cohen
    Attorney for Plaintiff
    STEVEN M. ROTH